The Honorable Jim Milum State Representative 607 Skyline Drive Harrison, AR 72601-2309
Dear Representative Milum:
You have requested an Attorney General opinion concerning an incident involving the termination of an employee of an education service cooperative.
You indicate that the pertinent facts are as follows: The employee taped a conversation with his supervisor without the supervisor's knowledge, and then declined to turn the tape over to the supervisor when requested to do so. The employee was notified by the cooperative director, in a letter dated July 20, 1998, that he was being suspended immediately for "continued insubordinate behavior demonstrated toward supervisor expectations." (The employee later received a letter from the cooperative director, dated July 29, 1998, listing four additional reasons to recommend his termination.) On July 22, 1998, the employee requested a public hearing before the cooperative's board of directors. A hearing before the board was commenced on November 30, 1998, but was adjourned before its completion. Only twelve of the twenty-one board members were present at that portion of the hearing. On March 15, 1999, the hearing was re-commenced and concluded. At this portion of the hearing, only eleven of the board members participated. Apparently, these eleven members were school superintendents. Two board members who had not participated in the first phase of the hearing sat in the audience and did not participate. At the conclusion of this phase of the hearing, the board went into executive session, then held a public vote to terminate the employee. During the employee's period of suspension, he did not receive his paychecks in a timely manner.
With regard to the foregoing facts, you have presented the following questions:
 (1) Under state law that was in effect at the time of the employee's termination, did the eleven school superintendents have the legal authority to serve as board members of the education service cooperative?
 (2) Under state law that was in effect at the time of the employee's termination, did the eleven school superintendents have the legal authority to terminate the employee?
 (3) If the answer to Question 1 is "yes," was a board member who was absent from the first phase of the hearing on November 30, 1998, forbidden by law from participating in the second phase of the hearing on March 15, 1999?
 (4) Under the provisions of Act 631 of 1991, may a board of directors go into executive session if a classified employee has requested that the hearing be public?
 (5) Did the cooperative director violate Section 4 of Act 631 of 1991 when he listed four additional reasons for his suspension of the terminated employee on July 29, 1998, in a letter to that employee dated July 28, 1998, (nine days after the suspension)?
 (6) Does "continued insubordinate behavior demonstrated toward supervisor expectations" meet the requirements of Act 631 of 1991?
 (7) In view of Act 1347 of 1995, may the cooperative's board of directors be forced to meet when petitioned to do so by a petition in writing signed by 50 electors?
 (8) Was Act 631 of 1991 violated when the employee was not paid in a timely manner?
 (9) Was Act 631 of 1991 violated if the employee was not notified in writing of the cooperative board's decision to terminate him within 10 calendar days?
RESPONSE
Question 1 — Under state law that was in effect at the time of theemployee's termination, did the eleven school superintendents have thelegal authority to serve as board members of the education servicecooperative?
It is my opinion that no provision of state law in effect at the time of the employee's termination (March 15, 1999)[1] would operate to prohibit school superintendents from serving as board members.
Board membership of education service cooperatives is governed by A.C.A. § 6-13-1006, which states:
 (a) Each education service cooperative shall be governed by a board of directors consisting of one (1) representative of each school district board of directors within the boundary of the cooperative.
A.C.A. § 6-13-1006(a).
My predecessor in office opined that this provision does not clearly address the question of whether school superintendents may serve on the boards of education service cooperatives, and that the issue could only be resolved definitively through legislative or judicial clarification.See Op. Att'y Gen. No. 98-016. In light of that ambiguity in the law, my predecessor opined that he could not state "that a clear prohibition exists against the service of a school superintendent on the cooperative board." Id. I believe that this assessment of the situation was correct, and I take the same position. Although this issue has been clarified legislatively for purposes of future application (see Footnote 1), it has never been clarified for purposes of the law that was in effect at the time of the employee's termination. Therefore unless the law in effect at that time is judicially declared to have carried a different intent, I conclude that that law does not appear to have prohibited school superintendents from service on the boards of education service cooperatives.
Question 2 — Under state law that was in effect at the time of theemployee's termination, did the eleven school superintendents have thelegal authority to terminate the employee?
It is my opinion that the eleven school superintendents did have the legal authority to terminate the employee (assuming that a quorum was present).
As indicated in response to Question 1, the law that was in effect at the time of the employee's termination did not appear to prohibit these superintendents from serving on the board.
Question 3 — If the answer to Question 1 is "yes," was a board member whowas absent from the first phase of the hearing on November 30, 1998,forbidden by law from participating in the second phase of the hearing onMarch 15, 1999?
It is my opinion that state law does not prohibit a board member who did not participate in the first phase of a termination hearing from participating in a subsequent phase. The law's requirements regarding the conduct of termination hearings are directed at the board as a whole, rather than at individual members of the board. It is "the board" that must meet according to the stated requirements, and it is "the board" that must render a decision at the close of the hearing. If the group who gathered at each phase of the hearing can legitimately be called "the board," it was in compliance with state law to the extent of its composition. It may be the case, however, that local board rules may prohibit the situation you have described. State law does not.
Question 4 — Under the provisions of Act 631 of 1991, may a board ofdirectors go into executive session if a classified employee hasrequested that the hearing be public?
It is my opinion that under the provisions of Act 631 of 1991 [the Fair Teacher Dismissal Act, codified at A.C.A. § 6-17-1701 et seq.,] a board of directors may go into executive session to deliberate and reach its decision, even if an employee to whom the Act is applicable has requested that the "hearing" be public.
With regard to termination hearings, the Fair Teacher Dismissal Act states: "The hearing shall be private unless the teacher or the board shall request that the hearing be public." A.C.A. § 6-17-1509(c)(2). It is my opinion that the "hearing" to which this provision applies is the evidentiary portion of the proceeding, and not the deliberations of the board. I base this conclusion on the commonly-accepted meaning of the term "hearing," as reflected in the definition stated in Black's Law Dictionary. According to that definition, a hearing is a "[p]roceeding . . . in which witnesses are heard and parties proceeded against have a right to be heard. . . ." This commonly-accepted definition contemplates that a "hearing" is the portion of the proceeding in which the interested parties are heard. This portion of the proceeding would not encompass the deliberations portion of the proceeding. For this reason, it is my opinion that the Fair Teacher Dismissal Act does not apply to the deliberations of the board. Rather, the Freedom of Information Act governs these deliberations. The Freedom of Information Act allows boards to go into executive session to discuss certain personnel matters, including the dismissal of public employees. A.C.A. § 25-19-106(c)(1). Accordingly, I conclude that a board of directors may go into executive session to deliberate, even if an employee to whom the Act is applicable has requested that the hearing be public. Accord, Op. Att'y Gen. No. 81-213.
Question 5 — Did the cooperative director violate Section 4 of Act 631 of1991 when he listed four additional reasons for his suspension of theterminated employee on July 29, 1998, in a letter to that employee datedJuly 28, 1998, (nine days after the suspension)?
This question raises issues that are intensely factual in nature and can only be definitely resolved by a trier of fact. The Attorney General is not authorized to resolve disputed questions of fact.
Nevertheless, I will discuss the provisions of law that are pertinent to the issues you have raised.
Under the provisions of A.C.A. § 6-17-1508, a notice of suspension must be given to the employee within two school days of the suspension and must include a "simple but complete statement of the grounds for the suspension." In the situation you described, the suspension took place on July 20, 1998, and the employee received the "Significant Incident Report," stating the reason for the suspension, on July 20. That report stated: "Based on Mr. Brown's continued insubordinate behavior demonstrated toward supervisor expectations, I am suspending him immediately. . . ." I note that this July 20 report could be viewed as a notice of suspension, given pursuant to A.C.A. § 6-17-1508. This report was given to the employee within two school days of the suspension.
Under the provisions of A.C.A. § 6-17-1507, a notice of termination recommendation must also include a "simple but complete statement of the recommendation of termination." This statute does not require that the notice of termination recommendation be given to the employee within a particular time frame, but it must be sent to the employee by certified or registered mail. In the situation you described, the July 29 letter to the employee listed four reasons to recommend the employee's termination, based on events that had taken place after the July 20 suspension. This letter could be interpreted as a notice of termination (separate and apart from the July 20 notice of suspension), given to the employee pursuant to A.C.A. § 6-17-1507.
Again, the ultimate interpretations of the notice documents referenced above are interpretations of fact, and I do not draw any factual conclusions about them.
Question 6 — Does "continued insubordinate behavior demonstrated towardsupervisor expectations" meet the requirements of Act 631 of 1991?
It is my opinion that this question is ultimately one of fact that the Attorney General is not authorized to answer. However, I will note that the language you have quoted (i.e., "continued insubordinate behavior demonstrated toward supervisor expectations") was stated in the July 20 report as the basis for immediate suspension of the employee. The Fair Teacher Dismissal Act does not state any parameters for acceptable suspension, other than that the superintendent (or applicable supervisor) believe that "cause exists for the termination" of the employee in question. A.C.A. § 6-17-1508. Any "cause" for termination that is not "arbitrary, capricious, or discriminatory" is acceptable under the Act. A.C.A. § 6-17-1507. The question of whether any stated cause (such as "continued insubordinate behavior demonstrated toward supervisor expectations") is arbitrary, capricious, or discriminatory is a question of fact that will turn on the facts and circumstances of each individual case. Because, as indicated previously, I am not authorized to determine questions of fact, I cannot opine in response to this question.
Question 7 — In view of Act 1347 of 1995, may the cooperative's board ofdirectors be forced to meet when petitioned to do so by a petition inwriting signed by 50 electors?
It is my opinion that the provisions of Act 1347 of 1995 [A.C.A. §6-13-619] do not apply to the boards of education service cooperatives. Accordingly, it is my opinion that the cooperative's board of directors cannot be forced to meet when petitioned to do so by a petition in writing signed by 50 electors, as can a school district's board of directors.
A.C.A. § 6-13-619 applies to the boards of directors of school districts, and states in pertinent part:
 (a)(1) The board of directors shall hold regular monthly meetings during the school term and shall meet on call of the president or secretary or any three (3) members of the board or when petitioned to do so by a petition in writing signed by fifty (50) electors in the district.
A.C.A. § 6-13-619(a)(1).
Although, as noted previously in response to Question 4, the employment and termination of education service cooperative personnel is to be subject to the laws and procedures that are applicable to certified public school personnel, see A.C.A. § 6-13-1011, it is my opinion that this requirement is limited to the employment and termination provisions that are specifically directed at school district personnel, and does not extend to the general procedural requirements for school district boards of directors.
This conclusion is evident from the fact that specific statutes are in place to govern the meeting requirements for the boards of education service cooperatives. Under the Education Service Cooperative Act, cooperative boards are specifically required to meet at least eight times per year. See A.C.A. § 6-13-1006. Because the legislature saw fit to create a meeting requirement for cooperative boards, I must conclude that it did not intend that such boards be subject to further meeting requirements. In this regard, it should be noted that the Education Service Cooperative Act does not create specific requirements for the employment and termination of personnel, but instead relies on the applicability of other laws. This is not the case with regard to cooperative board meeting requirements.
Accordingly, I conclude that the board of an education service cooperative cannot be forced to meet when petitioned to do so by 50 electors. This is not to say that a cooperative board could not choose to meet when presented with such a petition; it simply is not required by law to do so.
Question 8 — Was Act 631 of 1991 violated when the employee was not paidin a timely manner?
This is a question of fact that I cannot answer definitively, for the reasons indicated previously. A myriad of circumstances could be shown to bear on the manner in which a particular employee was paid in a given circumstance.
Nevertheless, I will note that under the provisions of the Fair Teacher Dismissal Act, which, as noted previously, is applicable to employees of education service cooperatives, employees who have been suspended are entitled to be paid until the cooperative board sustains the suspension. With regard to this matter, the Act states only the following: "The salary of a suspended teacher shall cease as of the date the board sustains the suspension." This statement indicates by implication that until the board has sustained an employee's suspension, his salary is to continue.
Question 9 — Was Act 631 of 1991 violated if the employee was notnotified in writing of the cooperative board's decision to terminate himwithin 10 calendar days?
As indicated in response to previous questions, the issue of whether the Act was violated in a particular situation is a question of fact that I am not authorized to determine.
Nevertheless, I note that Act 631 of 1991 (the Public School Employee Fair Hearing Act, codified at A.C.A. § 6-17-1701 et seq.)[2] is not clear with regard to the time frame within which an employee must be given notice of termination. The Act requires that both notices of termination and notices of non-renewal of contracts be in writing, and they must be either personally delivered to the employee or mailed by certified or registered mail. A.C.A. § 6-17-1703. The Act goes on to require that notices of non-renewal must be given no later than 30 calendar days before the beginning of the employee's next contract period. Id. The Act states no similar time frame for the delivery of notices of terminations.
The ten-day requirement to which your question probably refers is the requirement that the board's decision to terminate an employee be made within ten calendar days of the termination hearing.
Therefore, while it is unclear under the Act exactly what time frame is required for notice of termination, it is clear, nevertheless, that the Act does not require that notice be given within ten days.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SBA/cyh
[1] The pertinent law in effect on March 15, 1999 was A.C.A. §6-13-1006. That statutory section was amended in the 1999 legislative session by Act 398 of 1999. That Act stated:
SECTION 2. Arkansas Code 6-13-1006(a) is amended to read as follows:
 "(a) Each education service cooperative shall be governed by a board of 30 directors consisting of one (1) representative of appointed by each school district board of directors within the boundary of the cooperative."
Acts 1999, No. 398, § 2. Act 398 was approved on March 3, 1999, and did not contain an emergency clause. It therefore had not yet gone into effect at the time of the employee's termination.
[2] It is my opinion that the Public School Employee Fair Hearing Act is applicable to education service cooperative personnel for the same reasons that the Fair Teacher Dismissal Act is applicable, as explained in response to Question 4.